## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between May 1993 and November 2017, the Defendant, **BETTY ANN GARNER-NEWBY** ("**GARNER-NEWBY**"), stole and knowingly converted to her own use at least $326,091.00 in retirement annuity payments from the federal Civil Service Retirement System ("CSRS"), which is administered by the United States Office of Personnel Management ("OPM").

At all relevant times, **GARNER-NEWBY** was a resident of Maryland. Victim A died on April 12, 1993. **GARNER-NEWBY** notified state authorities of Victim A's death and was listed as the informant on Victim A's death certificate. Prior to his death, Victim A was enrolled in the CSRS. **GARNER-NEWBY** did not notify OPM of Victim A's death. Rather, after Victim A's death, **GARNER-NEWBY** twice submitted to OPM forms falsely and fraudulently indicating that Victim A remained alive to ensure the continuation of Victim A's annuity payments.

Specifically, in September 1993 and April 1995, OPM sent to Victim A an OPM Form RI 38-107, which requires an annuitant to confirm the spelling of his or her name and address information to avoid a suspension of benefits. This form provides a space to indicate that the annuitant is deceased. In September 1993, **GARNER-NEWBY** returned the form to OPM. **GARNER-NEWBY** forged Victim A's signature on this form and falsely showed that Victim A was not deceased. **GARNER-NEWBY** also signed the form. On a separate OPM form entitled "Follow Up Notification of Possible Suspension of Annuity Payments," **GARNER-NEWBY** updated Victim A's address to **GARNER-NEWBY**'s address in September 1993. In April 1995, **GARNER-NEWBY** submitted another OPM Form RI 38-107 to OPM, again showing that Victim A was not deceased. If **GARNER-NEWBY** had not submitted these forms, OPM would have ceased making retirement annuity payments to Victim A.

OPM continued to make monthly retirement annuity payments to Victim A until November 2017. These payments were deposited into a bank account held jointly in the names of Victim A and **GARNER-NEWBY**. **GARNER-NEWBY** then wrote checks to herself drawn from this bank account, and **GARNER-NEWBY** deposited these checks into a separate account held in **GARNER-NEWBY**'s name.

On or about June 19, 2018, agents with the OPM Office of the Inspector General conducted a voluntary, non-custodial interview of **GARNER-NEWBY** at her residence. As such, no *Miranda* warnings were given. **GARNER-NEWBY** informed the agents that Victim A's retirement payments were deposited into a joint account in **GARNER-NEWBY** and Victim A's names and that **GARNER-NEWBY** used money from this account to pay for everyday expenses, such as utility bills, mortgage payments, and food. **GARNER-NEWBY** further told the agents that she knew it was wrong to use the money deposited by OPM after Victim A's death.

GARNER-NEWBY stated that she believed she was Victim A's beneficiary and continued to use the money. After the agents showed GARNER-NEWBY the two September 1993 OPM forms, GARNER-NEWBY said, "You've got documentation I signed so that's it." She then explained that she forged Victim A's signature after Victim A's death and placed her address on the form.

Between May 1993 and November 2017, OPM paid $326,091 in retirement annuity payments to Victim A. In March 2018, OPM sent a letter to GARNER-NEWBY notifying her of this overpayment and asking that she return this amount. Since that time, GARNER-NEWBY has repaid $900.

SO STIPULATED:

_____
Jessica C. Collins
Assistant United States Attorney

_____
Betty Ann Garner-Newby
Defendant

_____
Rebecca Talbott, Esq.
Counsel for Defendant